IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

F. CRAIG ROBERTSON and CINDY T. )   Civil No. 18-00472 HG-WRP
ROBERTSON, as successor     )
trustees for the Laurie F.     )
Robertson Living Trust, dated  )
February 15, 2006, as amended  )
and restated,              )
                          )
          Plaintiffs,    )
                          )
        vs.            )
                          )
SCOTT WATSON; and INTERNAL    )
REVENUE SERVICE,        )
                          )
          Defendants.    )
———————————————————————)

**ORDER GRANTING, IN PART, AND DENYING, IN PART, PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNTS I, II, AND III OF THE COMPLAINT (ECF No. 34)**

Plaintiffs F. Craig Robertson and Cindy T. Robertson filed a Complaint against Defendant Scott Watson concerning jointly owned property.

Defendant Watson executed a Promissory Note in favor of Plaintiffs' father, Laurie Robertson, in his capacity as trustee for the Laurie F. Robertson Living Trust, in exchange for a loan.

Laurie Robertson is now deceased.

The Note was secured by a Mortgage, which was recorded against a parcel of real property in Hilo, Hawaii.

Plaintiffs are successors and assigns of their father and his trust.  They claim that Defendant has defaulted on the Note

1

and Mortgage.

Plaintiffs filed a motion for partial summary judgment as to Counts I (breach of contract and implied covenant of good faith and fair dealing), II (foreclosure), and III (ejectment) of their Complaint.

The United States of America is listed as a Defendant because it holds an outstanding tax lien against the property at issue. Plaintiffs admit that any claims by the United States of America would be primary to the interest of the Plaintiffs.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNTS I, II, AND III OF THE COMPLAINT (ECF. No. 34) is **GRANTED** as to Counts I and II, and **DENIED**, as to Count III.

**PROCEDURAL HISTORY**

On November 30, 2018, Plaintiffs filed the Complaint. (ECF No. 1).

On June 26, 2019, Plaintiffs filed PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNTS I, II, AND III OF THE COMPLAINT and a Concise Statement of Facts. (ECF Nos. 34, 35).

On July 26, 2019, Defendant United States of America filed DEFENDANT UNITED STATES OF AMERICA'S RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT. (ECF No. 37).

On July 30, 2019, Defendant Watson filed DEFENDANT SCOTT WATSON'S OPPOSITION TO THE PLAINTIFFS' JUNE 26, 2019 MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNTS I-III OF THE COMPLAINT and

a Concise Statement of Facts.  (ECF Nos. 38, 39).

On July 31, 2019, the Court issued a Minute Order striking DEFENDANT SCOTT WATSON'S OPPOSITION TO THE PLAINTIFFS' JUNE 26, 2019 MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNTS I-III OF THE COMPLAINT and a Concise Statement of Facts.  (ECF Nos. 38 and 39).  The filings failed to conform to District of Hawaii Local Rules.  Defendant Watson was required to file a Memorandum in Opposition and Concise Statement of Facts in conformity with the District of Hawaii Local Rules on or before Wednesday, August 7, 2019.  (ECF No. 40).

On August 12, 2019, Defendant Watson filed DEFENDANT SCOTT WATSON'S MOTION FOR ADDITIONAL TIME TO FILE CORRECTED OPPOSITION TO THE PLAINTIFFS' JUNE 26, 2019 MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNTS I-III OF THE COMPLAINT.  (ECF No. 45).

On August 12, 2019, the Court issued a Minute Order granting Defendant Watson's Motion for Additional Time.  (ECF No. 46).

On August 27, 2019, Defendant Watson filed DEFENDANT SCOTT WATSON'S OPPOSITION TO THE PLAINTIFFS' JUNE 26, 2019 MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNTS I-III OF THE COMPLAINT and a Concise Statement of Facts.  (ECF Nos. 47, 48).

On September 13, 2019, Plaintiffs filed their Reply and a Further Separate and Concise Statement of Facts.  (ECF Nos. 49, 50).

On September 25, 2019, Defendant filed DEFENDANT SCOTT

WATSON'S MOTION TO FILE SUPPLEMENTAL EVIDENCE OPPOSING PLAINTIFFS' JUNE 26, 2019 MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNTS I-III OF THE COMPLAINT. (ECF No. 52).

On September 30, 2019, the Court held a hearing on Plaintiffs' Motion for Partial Summary Judgment. At the hearing, Defendant Watson acknowledged the validity of both the 2014 and 2015 Notes. The Court issued a Minute Order granting Defendant Watson's Motion to submit supplemental evidence and directing Plaintiffs to file a copy of the Trust documents, including all amendments. (ECF No. 53).

On October 3, 2019, Plaintiffs filed PLAINTIFFS' SUPPLEMENTAL FURTHER SEPARATE AND CONCISE STATEMENT OF FACTS IN SUPPORT OF THEIR REPLY MEMORANDUM TO MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNTS I, II, AND III OF THEIR COMPLAINT, FILED ON SEPTEMBER 13, 2019 [DKT. #50]. (ECF No. 54).

On October 7, 2019, Defendant filed DEFENDANT SCOTT WATSON'S SUPPLEMENTAL STATEMENT OF FACTS OPPOSING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. (ECF No. 55).

### BACKGROUND

Laurie F. Robertson ("Robertson" or the "Deceased") owned real property located at 27-104 Lali Place, Hilo, Hawaii 96720 and identified as Tax Map Key No. (3) 2-7-036:001. (Complaint at ¶ 6, ECF No. 1).

Defendant Scott Watson ("Watson") lives on an adjacent plot

of real property located at 27-102 Lali Place, Hilo, Hawaii 96720 and identified as Tax Map Key No. (3) 2-7-036:015 (the "Property"). (Id. at ¶ 7).

In addition to being neighbors, Robertson and Watson were friends and occasional business partners. (Id.)

On January 22, 2008, Robertson, as trustee of the Laurie F. Robertson Living Trust, dated February 15, 2006 (the "Trust"), acquired from James Watson and Defendant Watson a 49% interest in the 27-102 Property. (Warranty Deed, recorded January 22, 2008, Doc. No. 2008-008753, attached as Ex. 3 to Pls.' Concise Statement of Facts ("CSF"), ECF No. 35-6). Later, Robertson, as trustee of the Trust, acquired a further 25.5% interest in the Property from James Watson. (Quitclaim Deed, recorded December 5, 2016, Doc. No. A-61830825, attached as Ex. 4 to Pls.' CSF, ECF No. 35-7).

**The Mortgage, Note, And Co-Tenancy Agreement**

On May 12, 2014, Defendant Watson executed a Promissory Note in the amount of $2,200,000 in exchange for a series of loans from Robertson. (Promissory Note, attached as Ex. 1 to Pls.' CSF, ECF No. 35-4). The Promissory Note was secured by a Mortgage on Defendant Watson's remaining 25.5% interest in the Property. (Mortgage, recorded November 14, 2016, Doc. No. A-61620850, attached as Ex. 2 to Pls.' CSF, ECF No. 35-5).

The obligations of the parties under the Note and Mortgage

were further outlined in a Co-Tenancy Agreement.  (Co-Tenancy
Agreement, recorded November 14, 2016, Doc No. A-61620851,
attached as Ex. 5 to Pls.' CSF, ECF No. 35-8).  Defendant
Watson's indebtedness under the Mortgage is due upon a breach of
the Co-Tenancy Agreement.  (Mortgage at p. 2, attached as Ex. 2
to Pls.' CSF, ECF No. 35-5).

**The Internal Revenue Service Lien**

On August 29, 2016, the Internal Revenue Service ("IRS")
issued a tax lien on the Property based on Defendant Watson's
failure to pay personal income tax for the tax periods ending
December 2012 and December 2013.  (Notice of Federal Tax Lien,
recorded August 29, 2016, attached as Ex. 9 to Pls.' CSF, ECF No.
35-12).  After this lawsuit was initiated, Defendant Watson paid
down a portion of the unpaid taxes, but a lien remains.  (Def.'s
Supplemental Statement of Facts, ECF No. 55; IRS Certificate of
Assessment, dated February 25, 2019, attached as Ex. 12 to Pls.'
CSF, ECF No. 35-15; Defendant United States of America's
Response, ECF No. 37).

**Robertson's Death And The Succession Of The Trust Estate**

Laurie Robertson died on September 17, 2017.  (Decl. of
Cindy T. Robertson at ¶ 3, attached to Pls.' CSF, ECF No. 35-1).
At the time of his death, Robertson, as trustee of the Trust,
held an undivided 74.5% interest in the Property.  (Warranty
Deed, recorded January 22, 2008, Doc. No. 2008-008753, attached

6

as Ex. 3 to Pls.' CSF, ECF No. 35-6; Quitclaim Deed, recorded December 5, 2016, Doc. No. A-61830825, attached as Ex. 4 to Pls.' CSF, ECF No. 35-7).

On November 20, 2017, Plaintiffs F. Craig Robertson and Cindy T. Robertson ("Plaintiffs") became the co-personal representatives of Robertson's estate. (Letters Testamentary, filed November 20, 2017, attached as Ex. 6 to Pls.' CSF, ECF No. 35-9). On December 5, 2017, Plaintiffs became the successor co-trustees of the Trust, as amended and restated. (Decl. of Cindy T. Robertson at ¶ 3, attached to Pls.' CSF, ECF No. 35-1; Third Amendment to Trust Agreement, attached as Ex. 27 to Pls.' Supplemental CSF, ECF No. 54-5).

As co-personal representatives of Robertson's estate, Plaintiffs assigned the Promissory Note to themselves in their capacity as successor co-trustees. (Assignment of 2014 Promissory Note, attached as Ex. 7 to Pls.' CSF, ECF No. 35-10).

**Plaintiffs' Efforts To Sell The Property**

On October 17, 2018, Plaintiffs' counsel sent a letter to Defendant Watson's attorney. The letter requested that Defendant Watson sign a listing agreement allowing Plaintiffs' broker to market the Property for sale. (October 17, 2018 Letter from Philip J. Leas, attached as Ex. 15 to Pls.' CSF, ECF No. 35-18).

Defendant Watson's counsel responded stating that Defendant Watson would only sign a listing agreement if the listing price

was increased from $1,900,000 to $4,000,000.  (November 19, 2018 Letter from Steven D. Strauss, attached as Ex. 16 to Pls.' CSF, ECF No. 35-19).  Defendant has not signed the listing agreement.

Plaintiffs filed a motion for partial summary judgment in which they contend that Defendant Watson has breached the Co-Tenancy Agreement in multiple ways.

Plaintiffs seek an order: (1) declaring Watson in breach of the Co-Tenancy Agreement, Note, and Mortgage; (2) entering judgment against Watson for the full amount owed under the Note; (3) declaring the Mortgage to be a valid lien; (4) foreclosing on the Mortgage; (5) ejecting Watson; (6) appointing a commissioner to take possession of and sell the Property; (7) authorizing the commissioner to deliver an instrument of conveyance to the purchaser of the Property; (8) awarding Plaintiffs their attorney's fees and costs; and, (9) directing final judgment in favor of Plaintiffs as to Counts I, II, and III of the Complaint.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  To defeat summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. The moving party need not produce any evidence at all on matters for which it does not have the burden of proof. Celotex, 477 U.S. at 325. The moving party must show, however, that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. That burden is met by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979). The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc.,

9

477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the nonmoving party. State Farm Fire & Cas. Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989). Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324. The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630. The opposing party cannot rest on mere allegations or denials. Fed. R. Civ. P. 56(e); Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994). When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact. Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993); see also Nat'l Steel Corp. v. Golden Eagle Ins. Co., 121 F.3d 496, 502 (9th Cir. 1997).

## ANALYSIS

Laurie F. Robertson ("Robertson" or the "Deceased") and Defendant Scott Watson ("Watson") were friends, neighbors, and occasional business partners prior to Robertson's September 17, 2017 death. (Decl. of Cindy T. Robertson, attached to Pls.' CSF, ECF No. 35-1).

On May 12, 2014, Watson executed a $2,200,000 Promissory Note in exchange for a loan from Robertson, as trustee of the Laurie F. Robertson Living Trust (the "Trust"). (Promissory Note, attached as Ex. 1 to Pls.' CSF, ECF No. 35-4).

The Promissory Note is secured by a Mortgage on Defendant Watson's interest in a parcel of real property in Hilo, Hawaii that Robertson and Defendant Watson jointly owned (the "Property"). (Mortgage, attached as Ex. 2 to Pls.' CSF, ECF No. 35-5).

The Mortgage was recorded with the State of Hawaii and is a valid lien on the Property. (Id.)

The obligations of the parties under the Note and Mortgage are further outlined in a Co-Tenancy Agreement. (Co-Tenancy Agreement, attached as Ex. 5 to Pls.' CSF, ECF No. 35-8).

The existence and validity of the Note, Mortgage, and Co-Tenancy Agreement is undisputed.

Plaintiffs allege Defendant has breached the three contracts in a variety of ways.

Plaintiffs seek multiple forms of relief, including: (1) a declaration that Watson is in breach of the Co-Tenancy Agreement, Note, and Mortgage; (2) a judgment against Watson for the full amount owed under the Note; (3) a declaration that the Mortgage is a valid lien; (4) a foreclosure on the Mortgage; (5) the ejectment of Watson; (6) the appointment of a commissioner to

take possession of and sell the Property; (7) authorization for the commissioner to deliver an instrument of conveyance to the purchaser of the Property; (8) an award of Plaintiffs' attorneys' fees and costs; and, (9) a final judgment in favor of Plaintiffs as to Counts I, II, and III of the Complaint.

Defendant denies breaching any of the contracts and alleges that, regardless of any potential breach, Plaintiffs are not the proper party to enforce the terms of the Note, Mortgage, or Co-Tenancy Agreement.

## I.    Plaintiffs' Standing To Enforce The Agreements

Laurie Robertson died on September 17, 2017.  (Decl. of Cindy T. Robertson at ¶ 3, attached to Pls.' CSF, ECF No. 35-1). Plaintiffs, two of Robertson's children, claim to be Robertson's successors and the proper parties to enforce the Note, Mortgage, and Co-Tenancy Agreement.

Defendant denies that Plaintiffs have sufficiently shown they are entitled to enforce the contracts.

Under Hawaii law a "'person entitled to enforce' an instrument," is defined as "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder."  Haw. Rev. Stat. Ann. § 490:3-301.  A "holder" is further defined as being "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession."  Haw.

12

Rev. Stat. Ann. § 490:1-201.

To enforce an instrument the holder must have been entitled to the possession of the instrument at the time suit was filed. <u>Bank of Am., N.A. v. Reyes-Toledo</u>, 390 P.3d 1248, 1255-56 (Haw. 2017). A holder who is in possession of the instrument at the time suit was filed is entitled to enforce the instrument through all means prescribed by the instrument and the law, including through foreclosure. <u>LPP Mortg. Ltd. v. Doctolero</u>, 2018 WL 1887117, at *3 (Haw. Ct. App. 2018).

Plaintiffs are the holders of the Note, as properly certified by their attorney under Haw. Rev. Stat. Ann. § 667-17. (Decl. of Dana A. Barbata, attached to Pls.' CSF, ECF No. 35-2).

Both the Mortgage and Co-Tenancy Agreement clearly state that they are applicable to the signatories--Defendant Watson and Laurie F. Robertson, Trustee of the Laurie F. Robertson Living Trust--as well as their "successors and assigns." (Mortgage at § 15, attached as Ex. 2 to Pls.' CSF, ECF No. 35-5; Co-Tenancy Agreement § D.18., attached as Ex. 5 to Pls.' CSF, ECF No. 35-8).

Under the terms of the Trust, the Mortgage and Co-Tenancy Agreement automatically became a part of the Trust Estate when they were signed. (Laurie F. Robertson Living Trust at § 2.02, attached as Ex. 24 to Pls.' Supplemental CSF, ECF No. 54-2). The Trust states that "the titling of any account, deed, or similar asset in the name of the Trustee, as Trustee of this Trust, or

13

any alterative or successor Trustee acting under this instrument, shall be deemed to be a transfer to this Trust."  (Id.)

Upon the death of Laurie Robertson, which happened nearly a year prior to the filing of this lawsuit, Plaintiffs became the successor co-trustees of the Trust as well as the co-personal representatives of the estate.  (Decl. of Cindy T. Robertson, attached to Pls.' CSF, ECF No. 35-1; Letters Testamentary, filed November 20, 2017, attached as Ex. 6 to Pls.' CSF, ECF No. 35-9; Third Amendment to Trust Agreement, attached as Ex. 27 to Pls.' Supplemental CSF, ECF No. 54-5; Acceptance of Successor Co-Trusteeship, attached as Ex. 29 to Pls.' Supplemental CSF, ECF No. 54-7).

Later, in their role as co-personal representatives, Plaintiffs assigned the Promissory Note to themselves, as successor co-trustees of the Trust.  (Assignment of 2014 Promissory Note, attached as Ex. 7 to Pls.' CSF, ECF No. 35-10).

Plaintiffs, as the possessors of the Note and the successors and assigns of the Deceased, have standing to enforce the Co-Tenancy Agreement, the Mortgage, and the associated Promissory Note.

## II. **Defendant Breached The Co-Tenancy Agreement**

Plaintiffs allege that Defendant Watson has breached the terms of the Co-Tenancy Agreement causing the Note and Mortgage to become due.  According to Plaintiffs, Defendant Watson

breached the Co-Tenancy Agreement in various ways, including: by causing an IRS lien to attach to the Subject Property; by refusing to sign the listing agreement with Plaintiffs' broker of choice; by refusing to purchase casualty insurance in an amount deemed reasonable by Plaintiffs; and, by not living alone on the Subject Property.

Defendant denies he breached the terms of any of the contracts and argues that there is at least a genuine dispute of fact as to whether any breach occurred.

### A.    Intent Of The Co-Tenancy Agreement

The overall intent of the Co-Tenancy Agreement is explicitly stated in an introductory provision which provides: "The Co-Tenants desire that the property be sold as soon as possible." (Co-Tenancy Agreement at § C, attached as Ex. 5 to Pls.' CSF, ECF. No. 35-8).

The parties' actions offer further support for this interpretation of the Co-Tenancy Agreement: by Defendant's own admission, the Property has been listed for sale "since completion of the home."  (Watson Interrogatory Responses at ¶ 5, attached as Ex. 10 to Pls.' CSF, ECF No. 35-13).

Besides the introductory provision, the parties' desire to facilitate the sale of the Property is reiterated in specific sections throughout the Agreement.  These sections include a provision requiring Defendant maintain the Property in good

condition; a provision requiring Defendant to pay all taxes and expenses "associated with owning or occupying the property;" a provision allowing Robertson to hire a real estate broker and sell the Property at a price and time of his choosing; and, a provision barring either party from granting "any mortgage lien or other encumbrance" on the Property. (Co-Tenancy Agreement at ¶¶ D.2., D.5., D.6., D.8., attached as Ex. 5 to Pls.' CSF, ECF No. 35-8).

There is no doubt that the intent of the parties in executing the Co-Tenancy Agreement was to ensure taxes were paid, that the Property was kept in good condition, and that the Property was immediately available for sale.

**B.    Defendant Caused An Internal Revenue Service Tax Lien To Attach To The Property In Violation Of The Co-Tenancy Agreement**

It is undisputed that on August 29, 2016, the Internal Revenue Service ("IRS") registered a lien on the Property based on Defendant Watson's unpaid personal income taxes for the years 2012 and 2013. (Notice of Federal Tax Lien, attached as Ex. 9 to Pls.' CSF, ECF No. 35-12).

After the onset of this lawsuit, Defendant paid the balance owed for the year 2012. (IRS Cert. Of Assessment, dated February 25, 2019, attached as Ex. 12 to Pls.' CSF, ECF No. 35-15; Defendant USA's Response, ECF No. 37). Defendant states he has attempted to set up a payment plan to begin to pay the remaining

16

outstanding tax balance, but an IRS lien remains in place. (Def.'s Supplemental Statement of Facts, ECF No. 55; Notice of Federal Tax Lien, attached as Ex. 9 to Pls.' CSF, ECF No. 35-12).

Plaintiffs allege that the IRS tax lien Defendant caused to be attached to the Property breaches the Co-Tenancy Agreement's bar on liens and encumbrances which states that neither Co-Tenant shall "grant any mortgage, lien or other encumbrance against all or any part of the Property, without the written consent of both Co-Tenants." (Co-Tenancy Agreement at § D.8., attached as Ex. 5 to Pls.' CSF, ECF No. 35-8).

"Under Hawaii law, to prevail on a claim for breach of contract, a party must prove: '(1) the contract at issue; (2) the parties to the contract; (3) whether Plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by Defendants; and (5) when and how Defendants allegedly breached the contract.'" Sunday's Child, LLC v. Irongate AZREP BW LLC, 327 F.Supp.3d 1322, 1341 (D. Haw. 2018) (quoting Evergreen Eng'g, Inc. v. Green Energy Team LLC, 884 F.Supp.2d 1049, 1059 (D. Haw. 2012)).

Defendant argues that the IRS lien cannot be a breach of the Co-Tenancy Agreement because the Agreement does not bar all liens on the Property; it only bars liens unilaterally granted by either party. According to Defendant, because the IRS tax lien was placed on the Property against Defendant's will, Defendant

17

did not "grant" the lien and thus did not violate the terms of the Agreement.

As a general rule, the interpretation and effect of a contract is a question of law. Foundation Int'l, Inc. v. E.T. Ige Constr., Inc., 78 P.3d 23, 30-31 (Haw. 2003). Unless they are ambiguous, "contract terms should be interpreted according to their plain, ordinary, and accepted sense in common speech." Id. at 31 (quoting Cho Mark Oriental Food, Ltd. v. K & K Int'l, 836 P.2d 1057, 1064 (Haw. 1992). To determine whether ambiguity exists, Hawaii courts consider whether words or phrases are "uncertain or doubtful" as written in the context of the agreement. Farrow v. Sunra Coffee, LLC, Civ. No. 05-00715 HG-BMK, 2006 WL 2884086, at *4 (D. Haw. Oct. 6, 2006). In the absence of any ambiguity as to the intent of the parties, a question of construction arising upon the face of the instrument is for the court to decide. Foundation Int'l, Inc., 78 P.3d at 33.

The intent and meaning of the Co-Tenancy Agreement is unambiguous.

As discussed supra § II.A., the overall intent of the Co-Tenancy Agreement is to maintain the Property in good condition such that it can be sold "as soon as possible." (Co-Tenancy Agreement at § C, attached as Ex. 5 to Pls.' CSF, ECF No. 35-8).

Read in the context of the entire Agreement, § D.8. of the

Agreement forbidding either party from "grant[ing] any mortgage, lien or other encumbrance against all or any part of the Property, without the written consent of both Co-Tenants" is clearly meant to bar encumbrances, such as an IRS tax lien, that would impede the parties' ability to sell the Property as desired. (Co-Tenancy Agreement at § D.8., attached as Ex. 5 to Pls.' CSF, ECF No. 35-8).

Defendant puts forth his own interpretation of the encumbrances provision of the Agreement, but his interpretation is not controlling. Disagreements as to the meaning of a contract or its terms do not render clear language ambiguous. State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 978 P.2d 753, 762 (Haw. 1999).

There is no genuine dispute that Defendant breached the terms of the Agreement by causing the IRS tax lien to encumber the Property.

Plaintiffs' Motion for Partial Summary Judgment on Count I, breach of contract, is **GRANTED**, based on Defendant allowing a federal tax lien to attach to the Property in contravention of § D.8. of the Co-Tenancy Agreement.

### III. Maturity Of The Note

Defendant Watson asserts that the $2,200,000 figure listed in the Note, Mortgage, and Co-Tenancy Agreement was an error that he and Robertson discussed. (Watson Interrogatory Responses at

19

¶¶ 16, 21, attached as Ex. 10 to Pls.' CSF, ECF No. 35-13).
Watson claims that the loans underlying the Note totaled
$2,035,000 and this is the amount that should be reflected in the
documents.  (Id.)

Where a writing is clear and unambiguous, and "the final
and, therefore, integrated expression of the parties' agreement,"
the parol evidence rule bars evidence of prior or contemporaneous
negotiations and agreements that contradict the terms of the
writing.  State Farm Fire & Cas. Co., 978 P.2d at 762.

All three contracts--the Note, Mortgage, and Co-Tenancy
Agreement--are clear and unambiguous.  Defendant's statement
contradicting the figure unequivocally listed in all three
written contracts precludes consideration under the parol
evidence rule.

Defendant also argues that regardless of the amount of the
Note, no payment is due until May 2024, ten years after the Note
was signed.  Defendant offers no evidence to support this
assertion but claims it was his and Robertson's understanding.

The Note contemplates three potential maturity dates: (1) 10
years after the Note is signed, (Promissory Note at § 2, attached
as Ex. 1 to Pls.' CSF, ECF No. 35-4); (2) upon the sale of the
Property, (Id.); or (3) in the event of a default, whenever
Plaintiffs declare the unpaid balance of principal and accrued
interests on the Note due and payable, (Id. at § 6).

There has been a default by Defendant Watson.  In the event of a default on the Co-Tenancy Agreement, the Mortgage also grants Plaintiffs the right to deem "the whole amount of all indebtedness owing by or chargeable to [Defendant] under the Note or under any provision of th[e] Mortgage" immediately due. (Mortgage at p. 2, attached as Ex. 2 to Pls.' CSF, ECF No. 35-5).

Defendant has breached the Co-Tenancy Agreement and defaulted on the Mortgage.  As such, the whole amount of indebtedness owing on the Note is due and payable.

## IV.  Foreclosure

The Mortgage explicitly provides that upon the occurrence of a default under the Co-Tenancy Agreement, Plaintiffs "have a power of sale sufficient to foreclose on the mortgaged property pursuant to Hawaii Revised Statutes Chapter 667, Part I or Part II" and may foreclose on the Mortgage by court proceeding. (Mortgage at p. 3, attached as Ex. 2 to Pls.' CSF, ECF No. 35-5).

A foreclosing party must demonstrate: (1) the existence of an agreement; (2) the terms of the agreement; (3) a default by the mortgagor under the terms of the agreement, and; (4) giving of the cancellation notice.  Bank of Am., N.A., 390 P.3d at 1254; see also BNP Paribas VPG Brookline CRE, LLC v. White Sands Estates, LLC, Civ. No. 09-00191 JMS-BMK, 2012 WL 984890, at *3 (D. Haw. Mar. 22, 2012).  "A foreclosing plaintiff's burden to prove entitlement to enforce the note overlaps with the

requirements of standing in foreclosure actions as '[s]tanding is concerned with whether the parties have the right to bring suit.'" <u>Nationstar Mortg. LLC v. Chase</u>, 2018 WL 3135440, at *1 (Haw. Ct. App. 2018) (quoting <u>Mottl v. Miyahira</u>, 23 P.3d 716, 723 (Haw. 2001)).

A foreclosing party must prove entitlement to enforce the note since it is the default that gives rise to the foreclosure. <u>Bank of Am., N.A.</u>, 390 P.3d. at 1254. Once entitlement is shown, Hawaii law allows that "[a] secured party...[m]ay reduce a claim to judgment, foreclose, or otherwise enforce the claim...by any available judicial procedure." Haw. Rev. Stat. Ann. § 490:9-601(a).

Plaintiffs have established their entitlement to enforce the Note, Mortgage, and Co-Tenancy Agreement. Foreclosure is a proper remedy under the terms of the Mortgage and the laws of the State of Hawaii.

Plaintiffs' motion for partial summary judgment is **GRANTED** as to Count II.

## V.    Alternative Breaches

Plaintiffs allege Defendant has breached the Co-Tenancy Agreement in multiple additional ways: by refusing to sign the listing agreement with Plaintiffs' broker of choice; by refusing to purchase casualty insurance in an amount deemed reasonable by Plaintiffs; and, by not living alone on the Subject Property.

**A.** **Plaintiffs' Request That Defendant Increase The Casualty Insurance On The Property Is A Fact Question**

The Co-Tenancy Agreement requires that Defendant Watson "carry a casualty insurance policy...as shall be required by [Plaintiffs] from time to time on forms **reasonably** acceptable to [Plaintiffs]." (Co-Tenancy Agreement at § D.5., attached as Ex. 5 to Pls.' CSF, ECF No. 35-8) (emphasis added).

When the performance of a contract is required to be reasonable and that term "is subject to differing interpretations (i.e., is relative and not readily definable), it is inherently ambiguous." Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 839 P.2d 10, 24 (Haw. 1992) (internal quotations omitted). Summary judgment is generally inappropriate where ambiguity exists as to someone's state of mind. Id.

Summary judgment on the reasonable level of insurance required by Defendant is improper based on the current record. The determination of a reasonable level of insurance coverage is a genuine, disputed factual question appropriate for the trier of fact to determine at trial, and not for this Court to decide on summary judgment.

**B.** **The Presence Of Defendant's Family On The Property Is A Fact Question**

The Co-Tenancy Agreement states that "Watson **alone** will live on the Property until it is sold." (Co-Tenancy Agreement at § C, attached as Ex. 5 to Pls.' CSF, ECF No. 35-8) (emphasis added).

"When an ambiguity exists so that there is some doubt as to the intent of the parties" a contract interpretation question is left for the trier of fact. <u>Foundation Int'l, Inc.</u>, 78 P.3d at 33.

The Complaint states that Defendant is in breach based on "Defendant allow[ing] individuals who are not part of his nuclear family to reside on the Property." (Complaint at ¶ 29, ECF No. 1). Plaintiffs have also argued that nobody, including Defendant's nuclear family, may live with him on the Property. (Pls.'s Mot. for Partial Summary Judgment at p. 12, ECF No. 34-1).

Defendant has posited a third interpretation of the contract: only third-party tenants are barred from living on the Property.

The Court finds that the intent of the contracting parties is ambiguous with regards to who is allowed to live with Defendant on the Property.

### C. Defendant's Refusal To Sign A Listing Agreement At Plaintiffs' Proposed Listing Price Is Moot

On October 17, 2018, Plaintiffs' counsel sent a letter to Defendant Watson's attorney, Steven Strauss, requesting that, per the terms of the Co-Tenancy Agreement, Defendant Watson sign a listing agreement allowing a real estate broker to attempt to sell the Property at a listing price of $1,950,000. (October 17, 2018 Leas Letter, attached as Ex. 15 to Pls.' CSF, ECF No. 35-

18).

Strauss responded on behalf of Defendant Watson stating that his client would "agree to list the Property for an amount equal to or greater than the debt he owes on the Property, which is $4,000,000." (November 19, 2018 Strauss Letter, attached as Ex. 16 to Pls.' CSF, ECF No. 35-19). Strauss's reply did not include a signed listing agreement, as requested.

Plaintiffs allege that Defendant's refusal to sign the listing agreement constitutes a breach of § D.6. of the Co-Tenancy Agreement which states:

> **Robertson shall be entitled to market, advertise, attempt to sell and sell the Property (including Watson's interest therein), at any price and on any terms acceptable to Robertson, in his sole discretion.** In connection therewith, Robertson shall be entitled to hire one or more real estate brokers to sell the Property and may agree to pay such brokers any commissions, fees or other charges acceptable to Robertson in his sole discretion. **Watson agrees, upon request of Robertson, to sign any and all documents as may be requested by Robertson** to facilitate the hiring of any such broker and/or the sale of the Property.

(Co-Tenancy Agreement § D.6., attached as Ex. 5 to Pls.' CSF, ECF No. 35-8) (emphasis added).

The parties' dispute regarding Defendant's failure to sign the listing agreement and the proper price of the sale is moot given the Court's ruling that a breach has occurred and foreclosure is a proper remedy.

The dispute over the appropriate sale price of the Property is governed by Hawaii law which requires foreclosing parties to

operate in good faith in conducting a foreclosure sale. <u>Ulrich</u> <u>v. Sec. Inv. Co.</u>, 1939 WL 8155 (Haw. 1939). Foreclosure sales must be executed in a fair and reasonable manner intended to obtain the best price under the circumstances. <u>Hungate v. Law</u> <u>Office of David B. Rosen</u>, 391 P.3d 1, 16 (Haw. 2017). The best price available at a foreclosure sale may be less than the fair market value of the property. <u>Id.</u> "Although 'the mortgagee's duty to seek the best price under the circumstances does not require the mortgagee to obtain the fair market value of the property...the mortgagee nonetheless has a duty to use fair and reasonable means to conduct the foreclosure sale in a manner that is conducive to obtaining the best price under the circumstances.'" <u>Wells Fargo Bank, N.A. v. Omiya</u>, 420 P.3d 370, 387 (Haw. 2018) (quoting <u>Hungate</u>, 391 P.3d at 15-16).

The Court orders that the foreclosure sale be conducted in a fair, reasonably diligent, good faith manner that results in an adequate price, as is required by Hawaii law. <u>See</u> <u>Kondaur</u> <u>Capital Corp. v. Matsuyoshi</u>, 361 P.3d 454, 467 (Haw. 2015).

## VI. Foreclosure Procedure

The Court will hold a status conference with the parties to review the method of foreclosure.

The parties are to meet and confer to suggest the manner with which the foreclosure sale should be conducted.

Any foreclosure sale will be subject to the approval of

Court.

## VII. Ejectment

A claim for ejectment requires the movant to demonstrate that he has ownership of the property occupied by the defendant. Kondaur Capital Corp. v. Matsuyoshi, 2014 WL 895025, *6 (Haw. Ct. App. 2014). Ownership means title to and right of possession to the property. JPMorgan Chase Bank, Nat'l Ass'n v. Benner,, 359 (Haw. Ct. App. 2016). Plaintiff must then establish that defendant is unlawfully withholding possession from plaintiff. Id.

In a motion for summary judgment, the burden is on the movant to identify for the court "the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc., 809 F.2d at 630 (citing Celotex Corp., 477 U.S. at 323).

The Mortgage indicates that in the event of a sale of the Property, Defendant will have the right of possession until the effective date of the sale. (Mortgage at § 8, attached as Ex. 2 to Pls.' CSF, ECF No. 35-5).

Plaintiffs have failed to present legal or evidentiary arguments to justify their request for Defendant's immediate pre-sale ejectment from the Property.

Given Plaintiffs' failure to put forth evidence or arguments justifying Defendant's immediate ejectment from the Property, and

the Mortgage's indication that Defendant may stay on the Property until a sale occurs, the Court declines to issue a writ of ejectment at this time.

Plaintiffs' motion for partial summary judgment is **DENIED** as to Count III.

## VIII.    Attorney's Fees and Costs

The Note, Mortgage, and Co-Tenancy Agreement all require Defendant to pay Plaintiffs' reasonable attorney's fees and costs if Plaintiffs win a suit to enforce the agreements.  (Promissory Note at § 6, attached as Ex. 1 to Pls.' CSF, ECF No. 35-4; Mortgage at p. 2, attached as Ex. 2 to Pls.' CSF, ECF No. 35-5; Co-Tenancy Agreement at § 13, attached as Ex. 5 to Pls.' CSF, ECF No. 35-8).

The Court has found Defendant in breach of his obligations under the contracts and has ruled in favor of Plaintiffs as to Counts I and II of their Motion for Summary Judgment.  Plaintiffs shall move with respect to attorney's fees and costs after completion of the foreclosure sale.

//

//

//

//

//

//

**CONCLUSION**

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNTS I, II, AND III OF THE COMPLAINT (ECF No. 34) is **GRANTED** as to Counts I and II, and **DENIED** as to Count III.

Count IV (Tortious Interference with Economic Advantage) and Count V (Injunctive Relief) of the Complaint remain.

IT IS SO ORDERED.

DATED:     February 5, 2020, Honolulu, Hawaii.

Helen Gillmor
United States District Judge